**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTY E. JONES,**

**6:15-cv-902**
                **Plaintiff,**          **(GLS/TWD)**

          **v.**

**MATTHEW HOWARD et al.,**

           **Defendants.**
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |

**FOR THE PLAINTIFF:**
Office of Michael A. Castle         MICHAEL A. CASTLE, ESQ.
110 West Albany Street
Herkimer, NY 13350

**FOR THE DEFENDANTS:**
Murphy Burns LLP          THOMAS K. MURPHY, ESQ.
407 Albany Shaker Road
Loudonville, NY 12211

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Christy E. Jones commenced this action against two Village of Frankfort, New York Police (hereinafter "Frankfort Police") officers, defendants Matthew Howard and Louis Romano.  (Compl., Dkt. No. 1.) Jones brings various claims under 42 U.S.C. § 1983 and New York State law.  (*See generally id.*)  Pending is defendants' motion for summary judgment.  (Dkt. No. 16.)  For the reasons that follow, the motion is denied.

### II.  Background

#### A.    Facts[1]

On the evening of August 15, 2014, Jones attended the Herkimer County Fair in Frankfort, New York.  (Defendants' Statement of Material Facts (Defs.' SMF) ¶ 1, Dkt. No. 16, Attach. 1.)  The fair is run by the Herkimer County Fair Association (hereinafter "Fair Association"), a private organization.  (*Id.* ¶ 2.)  The fairground property, located at 133-35 Cemetery Street in Frankfort, is private property owned by the Fair Association.  (*Id.*)  This property was open to the general public for the fair

---

[1] Unless otherwise noted, the facts are not in dispute.

on August 15, 2014.  (Dkt. No. 19 ¶ 2.)[2]

That evening, Sandra Pasquale was working as a volunteer in the beer tent of the fair.  (Defs.' SMF ¶ 3.)[3]  While at the fair, Jones entered the beer tent a number of times and consumed three to four cups of beer prior to 10:30 P.M.  (*Id.* ¶ 5.)[4]  In the beer tent, Jones used a vaporizer machine to inhale and exhale large amounts of scented vapor.  (*Id.* ¶ 6.)  At about 10:30 P.M., Sandra Pasquale told Jones that she could not use her vaporizer in the beer tent and ordered her to leave the beer tent.  (*Id.* ¶ 7.)  Then a male told Jones to leave the fairgrounds.  (*Id.* ¶ 8.)  Defendants contend that he was a fair official, (*id.*), but Jones contends that he was a beer vendor, (Dkt. No. 19 ¶ 8).  She refused to leave the fairgrounds and was told by the man that if she did not leave, he would call the police.  (Defs.' SMF ¶ 9.)  Jones again refused to leave the fairgrounds.  (*Id.*)

Around the same time, Frankfort Police Officer Joseph Perri received

---

[2] Jones failed to comply with N.D.N.Y. L.R. 7.1(a)(3) by not setting forth additional material facts in separately numbered paragraphs.  However, to the extent that Jones responded to defendants' facts with additional facts supported by citations to the record, the court considers them as Jones's additional facts.

[3] The parties dispute whether Pasquale is a Fair Association committee member and whether she was in charge of the beer tent.  (Dkt. No. 19 ¶ 3.)

[4] Jones testified at a deposition that the beer was Coors Light, served in cups of an unknown size.  (Dkt. No. 28 at 45.)

a complaint about an intoxicated female at the beer tent. (Dkt. No. 16, Attach. 6 at 8-10.)[5] Defendants contend that Rick Pasquale, Sandra's son and Vice President of the Fair Association, wanted Jones escorted off the fairgrounds. (Defs.' SMF ¶¶ 4, 10; Dkt. No. 19 ¶¶ 4, 10.) Officer Perri and defendant Officer Howard responded to the beer tent. (Defs.' SMF ¶ 11.) What happened next is disputed.

Defendants' version is that Officer Perri told Jones that she had to leave the fairgrounds, but she refused. (*Id.* ¶ 12.) Officer Perri then requested assistance, and defendant Officer Romano and another officer arrived to assist. (*Id.* ¶ 13.)[6] Jones was again told to leave the fairgrounds or she would be arrested, and again she refused. (*Id.* ¶ 14.) Officers Howard and Romano then escorted Jones from the area of the beer tent to an area of the fairgrounds located outside one of the entry gates. (*Id.* ¶ 15.)[7] Once there, the officers again told Jones to leave the fairgrounds or she would be arrested. (*Id.* ¶ 16.) Jones refused, and Officer Romano placed her under arrest. (*Id.* ¶ 17.)

---

[5] The parties' dispute over this call, (Defs.' SMF ¶ 10; Dkt. No. 19 ¶ 10), is discussed in greater detail below. *See infra* Part IV.B.

[6] Jones admits this fact. (Dkt. No. 19 ¶ 13.)

[7] Jones admits this fact. (Dkt. No. 19 ¶ 15.)

Jones's version is that she was approached by officers and told that she had to leave the fairgrounds. (Dkt. No. 19 ¶ 12.) She asked why and was told by the officers that she had to go with them. (*Id.*) Jones asked if she was under arrest, but the police officers did not answer her. (*Id.*) Instead, two officers grabbed her by each arm and started to escort her out of the fairgrounds. (*Id.*) She continued to ask if she was under arrest but received no response. (*Id.*)

The parties agree that Jones was transported to the Frankfort Police station by defendants in a marked police sport utility vehicle. (Defs.' SMF ¶ 18.) At the station, defendants opened the rear door of the vehicle and told Jones to exit the vehicle. (*Id.* ¶ 19.) Defendants claim that Jones refused to exit the vehicle, (*id.* ¶ 20), which Jones denies, (Dkt. No. 19 ¶ 20). Jones claims that she could not move her right leg. (Defs.' SMF ¶ 21; Dkt. No. 19 ¶ 21.)[8] She asked for help from the officers in exiting the vehicle. (Defs.' SMF ¶ 22; Dkt. No. 19 ¶ 22.) The parties disagree on what happened next.

---

[8] During a deposition, Jones testified, "I was unable to really move [my right leg] for some reason, I don't know if it was due to the bruise, the bruising that was on my upper buttock, [or] if it was something pinching in my neck due to the fact that I was sitting on a hard plastic bench with my hands cuffed behind me." (Dkt. No. 16, Attach. 7 at 69.) Later in the deposition she testified, "I'm not sure why." (*Id.* at 72.)

Defendants' version is as follows.  They observed that Jones's feet were shoved underneath the partition that separates the front and rear seats within the vehicle, and they reached in and pulled her feet free. (Defs.' SMF ¶ 23.)  Howard freed her right foot, and Romano freed her left foot.  (*Id.* ¶ 24.)  They turned Jones toward the door opening, and she exited the vehicle with their help.  (*Id.* ¶ 25.)

Jones's version is that one of the officers "reached in and grabbed [her] lower right leg, and said, get the hell out of the car, and he yanked [h]e[r] around."  (Dkt. No. 16, Attach. 7 at 69.)  She "screamed, you just broke my fuckin' knee."  (*Id.* at 71.)  Jones denies that she shoved her feet under the partition.  (*Id.* at 72.)

The parties agree that Jones complained of pain in her right knee. (Defs.' SMF ¶ 26.)  She was provided medical attention at the police station during her processing and was eventually transported to a hospital by medical personnel.  (*Id.* ¶ 27.)

Jones was charged with trespass in violation of New York State Penal Law § 140.05 and disorderly conduct in violation of § 240.20(3), was issued appearance tickets, and was released on her own recognizance. (*Id.* ¶ 28.)  On September 26, 2014, Jones appeared in Frankfort Town

6

Court, pled guilty to trespass in full satisfaction of all charges, and paid a

$125.00 fine. (*Id.* ¶ 29.) In a Decision and Order dated April 6, 2015,

Frankfort Town Justice Frank L. Madia granted a motion vacating Jones's

conviction and permitting her to withdraw her guilty plea to the trespass

charge and instead interpose a plea of not guilty. (*Id.* ¶ 30.)[9] The charges

pending against Jones were dismissed on June 16, 2015. (*Id.* ¶ 32; Dkt.

No. 19 ¶ 32.)

## B.   Procedural History

Jones filed her complaint on July 23, 2015. (Compl.) She brought

the following claims against defendants: (1) a Section 1983 claim for false

imprisonment, (*id.* ¶¶ 11-20); (2) a Section 1983 claim for excessive force,

(*id.* ¶¶ 21-29); (3) a Section 1983 claim for malicious prosecution, (*id.*

¶¶ 30-40); (4) a New York State law false imprisonment claim, (*id.* ¶¶ 41-

48); (5) a New York State law assault and battery claim, (*id.* ¶¶ 49-53); (6)

a New York State law malicious prosecution claim, (*id.* ¶¶ 54-57); and (7)

a New York State law negligence claim, (*id.* ¶¶ 58-62).[10]

---

[9] The Decision and Order held that, although the Assistant District Attorney had advised Jones of her right to counsel and right to an adjournment, the Frankfort Town Court had not specifically done so prior to accepting her guilty plea. (Defs.' SMF ¶ 31.)

[10] Jones's malicious prosecution claims—her third and sixth claims—are against Howard only.

Defendants filed the pending motion for summary judgment on September 30, 2016.  (Dkt. No. 16.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

### A.  Excessive Force and Assault and Battery Claims

As described above, *see supra* Part II.A, the parties have very different versions of what happened when defendants acted to remove Jones from the police vehicle.  This genuine dispute as to material facts—including whether defendants simply freed her feet or angrily yanked her around—preclude summary judgment as to her excessive force claim, which is all about reasonableness.  *See Walsh v. City of Kingston*, No. 1:08–CV–00611, 2010 WL 681315, at *4 (N.D.N.Y. Feb. 23, 2010) ("When a court is presented with a summary judgment motion on an excessive force claim, the court must deny the motion when disputed facts

8

exist which are material to a determination of reasonableness.") (internal

quotation marks and citation omitted).[11]  Defendants argue that they are

entitled to qualified immunity.  (Dkt. No. 16, Attach. 12 at 9-10.)  But the

disputed factual issues also preclude summary judgment on qualified

immunity grounds.  *See Curry v. City of Syracuse*, 316 F.3d 324, 334-35

(2d Cir. 2003); *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 28-

29 (E.D.N.Y. 2012).[12]

## B.    False Imprisonment Claims

Arguably, there is a basis for dismissing Jones's false imprisonment

claims[13] on qualified immunity grounds.  That is, there is a strong argument

that defendants had at least arguable probable cause, which would give

them qualified immunity for the arrest in question.  *See Zalaski v. City of*

*Hartford*, 723 F.3d 382, 390-95 (2d Cir. 2013); *Carpenter v. City of New*

---

[11] For the same reasons, defendants are not entitled to summary judgment on Jones's state law claim for assault and battery.  *See Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) ("Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law.") (internal citations omitted).

[12] Technically, qualified immunity would not protect defendants from claims based on state law.  *See Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007).  But a similar doctrine exists under New York common law.  *See id.* at 86-87; *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006).

[13] The parties sometimes refer to these claims as for "false arrest."  (Dkt. No. 21 at 2; Dkt. No. 16, Attach. 12 at 1.)  The correct term here is false imprisonment.  *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007).

*York*, 984 F. Supp. 2d 255, 264-65, 266 (S.D.N.Y. 2013).  Defendants

presented an incident report by Officer Perri, which states that "[O]fficer

[Perri] and [O]fficer Howard were requested by Herkimer County Fair

official Rick Pasquale to escort an uncooperative and b[e]lligerent female

(later found to be known as Christy Jones) from the . . . beer tent and off

the premises." (Dkt. No. 16, Attach. 5 at 4.)  The record also contains

deposition testimony from Officer Perri that Rick Pasquale wanted Jones

escorted out of the fairgrounds.  (*Id.*, Attach. 6 at 8-9).  These facts

seemingly give rise to at least arguable probable cause for trespass and

thus qualified immunity.  Nonetheless, as other of Jones's claims survive

summary judgment and there are pertinent factual issues to resolve, the

court declines to address qualified immunity as to Jones's Section 1983

false imprisonment claim at this juncture.[14]  Defendants are free to renew

their arguments in connection with trial.

## C.  Malicious Prosecution Claims

A similar qualified immunity analysis applies to Jones's malicious

prosecution claims.  *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 575

---

[14] For the same reasons, summary judgment is denied as to Jones's state law false imprisonment claim, which is substantially the same as her Section 1983 false imprisonment claim.  *See Weyant v. Okst*, 101 F.3d 845, 852.

(S.D.N.Y. 2015) (granting summary judgment as to malicious prosecution claim on qualified immunity grounds because there was at least arguable probable cause).[15]  For the same reasons that the court declines to address qualified immunity as to false imprisonment at this juncture, it also declines to do so for malicious prosecution.[16]  Further, defendants did not analyze whether there was probable cause for the disorderly conduct violation.  (Dkt. No. 36, Attach. 2 at 2.)  Unlike in the false imprisonment context, for malicious prosecution, demonstrating probable cause for trespass does not provide a defense for disorderly conduct as well. Defendants must demonstrate probable cause[17] for each violation at issue. *See Allen v. City of New York*, 480 F. Supp. 2d 689, 715 (S.D.N.Y. 2007) (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)); *Rodriguez v. N.Y.C. Police Dep't*, No. 10 Civ. 891, 2011 WL 5057205, at \*5 (S.D.N.Y.

---

[15] It should be noted that false imprisonment and malicious prosecution focus on different probable cause inquiries.  *McClellan v. Smith*, No. 1:02–CV–1141, 2009 WL 3587431, at \*6 (N.D.N.Y. Oct. 26, 2009), *aff'd sub nom. McClellan v. City of Rensselaer*, 395 F. App'x 717 (2d Cir. 2010).

[16] The same analysis applies to Jones's state law claim because "[t]he elements of a malicious prosecution claim under [S]ection 1983 are derived from applicable state law." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013).

[17] Or arguable probable cause for purposes of qualified immunity.

Oct. 24, 2011).[18]

Defendants also argue that Jones is unable to prove an element of malicious prosecution: that the criminal prosecution was terminated in her favor. (Dkt. No. 16, Attach. 12 at 4.) Defendants claim that the dismissal of the charges against Jones was not on the merits, (Defs.' SMF ¶ 32), but their only citation is to the certificate of disposition, which does not specify the basis of the dismissal, (Dkt. No. 16, Attach. 5 at 14). Jones argues that the charges were formally abandoned by the prosecutor, and thus the termination was favorable to her. (Dkt. No. 21 at 14-15.) In support, she offers an affidavit of her attorney, who states that he was present at the time the proceedings were abandoned. (Dkt. No. 20 ¶ 42.) He specifies that there was a formal abandonment of the proceedings by the prosecutor, which resulted in a final and unconditional termination of the proceedings. (*Id.* ¶¶ 40-41.)

"'[A] dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor[.]'" *Russell v. The Journal News*, 672

---

[18] Defendants also argue that the malicious prosecution claims fail because Jones was not subjected to a post-arraignment seizure. (Dkt. No. 16, Attach. 12 at 4.) Defendants are incorrect for the reasons articulated in Jones's opposition. (Dkt. No. 21 at 15.)

F. App'x 76, 79 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 84 (2017) (quoting

*Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000)). As here, "when the

grounds for the dismissal of a criminal proceeding are unclear, New York

courts consider whether the proceeding was terminated in plaintiff's favor

to be a question of fact that prevents summary judgment." *Rounseville v.*

*Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (citing *Allen v. Town of Colonie*, 182

A.D.2d 998, 1000 (3d Dep't 1992)). As the facts surrounding the

termination are in dispute, summary judgment is precluded. *See*

*Rounseville*, 13 F.3d at 629.

## D.   Negligence Claim

Defendants argue that Jones cannot bring a state law negligence claim.

(Dkt. No. 16, Attach. 12 at 7-8.) In her complaint, Jones claims that

defendants were negligent in "improperly detaining and arresting [Jones]"; in

"failing to conduct a sufficient, proper[,] or adequate investigation prior to

detaining, arresting[,] and charging [her]"; and in "employing unnecessary,

excessive[,] and unreasonable force while escorting and transporting [her]."

(Compl. ¶ 60.)

Defendants are correct that "[u]nder New York law, a plaintiff may not

recover under general negligence principles for a claim that law enforcement

13

officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see Boose v. City of Rochester*, 71 A.D.2d 59, 62 (4th Dep't 1979) (holding plaintiff cannot recover under negligence for alleged inadequate investigation "but must proceed by way of the traditional remedies of false . . . imprisonment and malicious prosecution"). Indeed, Jones does not respond to this argument and instead focuses only on her negligence claim regarding defendants' use of force. (Dkt. 21 at 20-23.)

Defendants argue that "[it] is well settled that no cause of action to recover damages for negligent excessive force/assault exists in New York." (Dkt. No. 16, Attach. 12 at 8 (citing cases).) Admittedly, some courts have held that, when a plaintiff brings excessive force and assault claims that are premised upon a defendant's allegedly intentional conduct, a negligence claim regarding the same conduct will not lie. *See Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000); *Hansel v. Sheridan*, 991 F. Supp. 69, 75-76 (N.D.N.Y. 1998). But controlling authority of the New York State Court of Appeals permits negligence claims against a police officer in the context of intentional conduct. *See McCummings v. N.Y.C. Transit Auth.*, 81 N.Y. 2d 923, 925 (1993) (affirming jury verdict on negligence claim against officer who

14

shot plaintiff while trying to apprehend him); *Flamer v. City of Yonkers*, 309 N.Y. 114, 117, 119 (1955) (reversing dismissal of negligence claim against officer where assault claim was submitted to jury).  Accordingly, courts have allowed such a negligence claim to be brought in the alternative.  *See, e.g.*, *Ferreira v. City of Binghamton*, 3:13-CV-107, 2016 WL 3129224, at *9 (N.D.N.Y. June  2, 2016); *Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 316 (N.D.N.Y. 2009).  Thus, summary judgment as to Jones's negligence claim is denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgement (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that this case is now deemed trial-ready and a trial scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 16, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge

15